IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THE GRAY INSURANCE COMPANY,

    Plaintiff,

v.                                                                                    Case No.:

JAX REFRIGERATION, INC. DBA
JAX MECHANICAL,
JAX REFRIGERATION, LLC,
JAX HVAC, INC., LDDV, LLC,
LOWERY REVOCABLE FAMILY TRUST,
MARK A. LOWERY, AND
SAMANTHA A. LOWERY,

    Defendants.
_____/

## COMPLAINT

Plaintiff, The Gray Insurance Company ("Gray"), by and through its undersigned counsel, sues Defendants, JAX Refrigeration, Inc. dba JAX Mechanical ("JAX Mechanical"), JAX Refrigeration, LLC ("JAX Refrigeration"), JAX HVAC, Inc. ("JAX"), LDDV, LLC ("LDDV"), Lowery Revocable Family Trust ("Trust"), Mark A. Lowery, and Samantha A. Lowery (sometimes collectively referred to as the "Indemnitors"), and alleges:

### PARTIES, JURISDICTION, AND VENUE

1. Gray incorporated under the laws of the State of Louisiana and maintains its principal place of business in Louisiana. Gray is authorized to conduct business in Florida.

2. Defendant, JAX Mechanical, is a corporation organized under the laws of the State of Florida, with its principal place of business in Ponte Vedra Beach, Florida.

3. Upon information and belief, Defendant JAX Refrigeration is a Florida limited liability company with its principal place of business in Ponte Vedra Beach, Florida. On information and belief, JAX Refrigeration's sole member is Mark Lowery, who is a resident and domiciliary of Ponte Vedra Beach, Florida.

4. Upon information and belief, Defendant JAX is a corporation organized under the laws of the State of Florida, with its principal place of business in Ponte Vedra Beach, Florida.

5. Upon information and belief, Defendant LDDV is a Florida limited liability company with its principal place of business principally located in Jacksonville Beach, Florida. On information and belief, LDDV's sole member is Samantha Lowery, who is a resident and domiciliary of Ponte Vedra Beach, Florida.

6. Upon information and belief, Defendant Trust is a Florida Revocable Trust, and Mark and/or Samantha Lowery, who are residents of and domiciled in Ponte Vedra Beach, Florida.

7. Upon information and belief, Defendant Mark A. Lowery ("Mr. Lowery") is a resident and citizen of Florida.

8. Upon information and belief, Defendant Samantha A. Lowery ("Mrs. Lowery") is a resident and citizen of Florida.

9. The causes of action alleged herein fall within the jurisdictional limits of the Court because Gray seeks to recover more than $75,000.00 from the Defendants, exclusive of interest and costs.

10. This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because Plaintiff and Defendants are citizens of diverse states and the amount in controversy exceeds the jurisdictional limit.

11. Venue is appropriate in this Court because one or more of the Defendants either reside in or have their principal place of business within the boundaries of the Middle District of Florida, and because one or more Defendants reside in or have their principal place of business located in one of the counties within the province of the Jacksonville Division of this Court.

## GENERAL ALLEGATIONS

12. Gray is, among other things, a surety company that issues payment and performance bonds and stands as surety for selected contractors.

13. At all pertinent times, JAX was a subcontractor on various construction project and from time to time required payment and performance bonds in connection with subcontracts.  To induce Gray to issue payment and performance bonds on its behalf, JAX, and the individual Defendants entered into an indemnity GIA with Gray.

14. On or about November 1, 2023, the Indemnitors executed a General Indemnity GIA ("GIA") in favor of Gray.  A true and correct copy of the GIA is attached hereto and incorporated herein as **Exhibit "A."**

3

15. The execution of the GIA, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent and prerequisites to Gray issuing any bonds naming JAX as a principal.

16. According to the GIA, at paragraph 2, the Indemnitors agreed, among other things, to:

> exonerate, indemnify, hold harmless and keep [Gray] indemnified from and against Loss, liability, damages and expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) sounding in contract, tort or otherwise, which [Gray] may sustain and incur: (a) by reason of having executed, delivered, or procured the execution of Bonds, or the renewal or continuation thereof, on behalf of any of the Indemnitors; (b) by reason of the failure of the Indemnitors to perform or comply with any of the covenants and conditions of this GIA, or the failure of the Indemnitors to discharge any obligations under this GIA; (c) in enforcing any of the terms, covenants or conditions of this GIA; or (d) in pursuing reimbursement for any Loss incurred hereunder…． .
>
> An itemized statement by an employee of [Gray], or other evidence of such payments, including records of any nature maintained by [Gray] in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety.

17. The Indemnitors further agreed, at paragraph 5 of the GIA, to "pay [Gray] an amount [Gray] deems necessary to protect itself from all Loss or expenses as soon as [Gray] determines that liability exists or has a reasonable basis to believe that it may incur liability, whether or not [Gray] has made any payment or created any reserve." Thus, the Indemnitors agreed to deposit collateral with Gray on demand.

18. The Indemnitors further agreed, at paragraph 12 of the GIA, that Gray:

> shall at all times have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand, or suit brought against Surety or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended, or appealed, regardless of whether liability exists, and its determination shall be final, binding and conclusive upon the Indemnitors…. If [Gray] elects not to tender its defense to any Indemnitor, the Indemnitors shall nevertheless remain liable to [Gray] for any and all Loss, costs, damages, interest and expense, including but not limited to attorneys' fees and professionals' fees resulting from [Gray's] investigation and/or defense.  [Gray] shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payment.

19. Gray agreed to issue various bonds at the Indemnitors' request in consideration for their promise to comply with the terms of the GIA including:

| **Bond Number** | **Bond Amount** | **Bond Obligee** | **Project** |
| --- | --- | --- | --- |
| GS59300680 | $1,025,748.00 | Kellogg & Kimsey Constructors, Inc. | Towneplace Suites |
| GS59300528 | $1,737,301.88 | Wharton-Smith, Inc. | Imagine School K8 – Pasco County Project |

The above listed bonds are collectively referred to herein as the "Bonds."  The Bonds are attached as **Exhibit "B."**  The projects referred to in this paragraph are collectively referred to herein as the "Bonded Projects."

5

20. Gray issued the Bonds securing JAX's performance and payment obligations in connection with JAX's subcontracts on the Bonded Projects.

21. Gray has received claims on the TownPlace Suites Project, and the obligee on the TownPlace Suite Projects has alleged various defaults by JAX under its subcontract. Further, Gray has reason to believe that it will receive claims on the Imagine Schools Project (the "Claims"). Specifically, Mr. Lowery has failed and/or refused, despite request, to confirm that funds received on the Imagine Schools Project have been used to pay JAX's subcontractors and suppliers on the Imagine Schools Project.

22. Due to JAX' failure to fully perform its performance and payment obligations as well as its refusal or inability to resolve the Claims, Gray was forced to hire consultants and the undersigned attorneys to respond to, investigate, and defend against the various Claims and to enforce Gray's rights under the GIA.

23. After investigation, Gray has paid various of the Claims.

24. Gray has incurred, and will continue to incur, losses as a result of issuing the Bonds and defending itself against the Claims in excess of $75,000.00.

25. Gray faces additional potential liability as it continues to receive claims against the Bonds, and thus also continues to incur attorneys' fees and costs as well as consultants' fees. Accordingly, its damages are continuing in nature.

26. Due to JAX' failure to fulfill its performance and payment obligations and refusal and/or inability to satisfy the Claims, on or about March 28, 2025, Gray, through counsel, demanded that JAX and/or the Indemnitors post collateral in the

amount of $2,250,000.00 pursuant to the terms of the GIA.  A copy of the letter demanding collateral is attached hereto as **Exhibit "C."**

27. Despite Gray's demand, the Indemnitors have failed and refused to comply with Gray's demand for collateral and has otherwise breached the GIA by failing to exonerate, hold harmless and indemnify Gray from loss.

28. Gray is in fear that it will continue to suffer losses and incur expenses as a result of the Claims and other currently unknown claims.

29. The GIA is unequivocal and specific in setting forth the Indemnitors' obligations to indemnify and keep Gray indemnified "from and against any and all Loss," which includes attorneys' fees and consultants' fees, as a result of executing the Bonds or because of the Indemnitors' failure to comply with the GIA.

30. Gray has retained the undersigned attorneys to represent it in this action, and is obligated to pay these attorneys a reasonable fee for their services rendered.

31. All conditions precedent to maintaining this action have either occurred, been excused, or otherwise been waived.

## COUNT I
### (Breach of Contract as to the GIA / Contractual Indemnity)

32. Gray realleges and incorporates the allegations in paragraphs 1 through 31 as if fully set forth herein.

33. Pursuant to the GIA, the Indemnitors promised to indemnify and hold Gray harmless from all loss, liability, damages and expenses which Gray incurs or

sustains because of having furnished the Bonds, or because of the failure of an Indemnitor to discharge any obligations under the GIA; and to deposit collateral upon demand of Gray.

34. Furthermore, the Indemnitors promised to indemnify and hold Gray harmless from any losses, liability, damages and expenses Gray incurs in enforcing any of the provisions of the GIA, pursuing the collection of any loss incurred by Gray, investigating any claim submitted under the Bonds, or any other expenses related to the defense of the Bonds.

35. The Indemnitors, however, failed and refused to honor these obligations as set forth in the GIA.

36. The Indemnitors have committed various breaches and defaults of the GIA, including but not limited to, failing and refusing to indemnify Gray from its losses, including attorneys' fees and consultants' fees, and all liability for losses and expenses that Gray incurred relating to Bonds, and failing and refusing to deposit collateral with Gray.

37. As a result of the Indemnitors' breaches of the GIA, Gray has incurred damages and loss in the form of payments made to claimants, attorneys' fees, consultants' fees, and other costs, and expects to continue to incur damages and fees as a result of additional claims against the Bonds.

38. To date, the Indemnitors have failed and refused to indemnify Gray for any loss whatsoever.

39.     Gray is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the GIA.

WHEREFORE, Gray requests that this Court enter judgment against the Indemnitors, jointly and severally, for damages, consultants' fees, attorneys' fees, prejudgment interest, costs, and such further relief as this Court deems just and proper.

## COUNT II
### (Specific Performance)

40.     Gray realleges and incorporates the allegations in paragraphs 1 through 31 as if fully set forth herein.

41.     Gray has suffered, and will continue to suffer, various kinds and natures of liability, loss, and expense as a result of having executed the Bonds due to the failure of the Indemnitors to honor their obligations under the GIA, and because of Gray's efforts to enforce the covenants and conditions in the GIA.

42.     In addition to the liability, loss, and expense that Gray has suffered or is suffering, Gray may be responsible and liable for additional losses and expenses as a result of additional claims made against the Bonds and JAX's failure and/or refusal to honor its obligations on Bonded Projects.

43.     Pursuant to the GIA, the Indemnitors agreed to "pay [Gray] an amount [Gray] deems necessary to protect itself from all Loss or expenses as soon as [Gray] determines that liability exists or has a reasonable basis to believe that it may incur liability, whether or not [Gray] has made any payment or created any reserve."

44. The GIA also states that the Indemnitors agree that their failure to deposit collateral security upon demand "shall cause irreparable harm to [Gray] for which [Gray] has not adequate remedy at law. Therefore, the Indemnitors agree that [Gray] shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary."

45. As a result of the Claims and additional claims occurring in the future, Gray has incurred losses, fees and expenses as a result of having issued the Bonds, and expects to incur additional losses, fees and expenses in the future.

46. The Indemnitors have failed and/or refused to perform their contractual obligations to collateralize Gray.

47. Gray issued the Bonds at the Indemnitors' request in consideration of the Indemnitors' promise to comply with the terms of the GIA.

48. Gray has no adequate remedy at law to enforce its rights.

49. The GIA is just and reasonable and supported by adequate consideration.

50. The GIA is clear, definite, and certain as to the Indemnitors' obligations and Gray's rights.

51. The terms of the GIA are sufficiently definite to allow enforcement by this Court.

52. The performance Gray seeks is substantially identical to that promised in the GIA.

WHEREFORE, Gray requests that this Court enter a decree and immediate order of specific performance compelling the Indemnitors, jointly and severally, to:

a. exonerate, indemnify, and hold harmless Gray for all losses, costs, and/or liability it has incurred to date;

b. exonerate, indemnify, and save harmless Gray, according to the terms of the GIA, for all liability asserted against Gray, whether or not Gray has made any payment therefor;

c. deposit with Gray the sum of $2,250,000.00 to collateralize Gray against losses, costs and/or liability under the Bonds in accordance with the GIA;

d. honor all further obligations contained in the GIA;

e. preventing the Indemnitors from diverting or disbursing any funds relating to the Bonds or Bonded Projects without Gray's express and written approval;

f. compelling the Indemnitors to post a bond or suitable collateral to secure Gray against any alleged liability, losses, or expenses;

g. attaching or freezing the Indemnitors' assets until an appropriate bond or collateral is posted to adequately protect Gray;

h. requiring the Indemnitors to render to Gray a full and complete accounting of all assets owned by them or in which they, jointly or severally, have any interest;

i. requiring the Indemnitors to allow Gray full and complete access to all financial books, records, and accounts maintained by or for them;

11

j.  permanently enjoining and restraining the Indemnitors from selling, transferring, disposing of, or liening any assets or property, and further enjoining and restraining the Indemnitors from allowing any assets or property to be liened, unless and until Gray shall be placed in funds;

k.  granting a lien upon all assets and property, including realty, personalty, and mixed, in which the Indemnitors have any interest. Gray further requests that such lien(s) shall secure Gray against any loss it may sustain or incur by virtue of its having executed the Bonds. Gray further requests that such lien(s) remain in effect unless and until Gray is placed in funds as requested hereinabove;

l.  requiring the Indemnitors, jointly and severally, to pay all attorneys' fees, costs, and expenses that Gray has incurred; and

m.  granting such further relief as this Court deems just and proper.

Dated this 17th day of June, 2025.

/s/ Alberta L. Adams
ALBERTA L. ADAMS
Florida Bar No. 80063
aadams@pdtlegal.com
PASKERT DIVERS THOMPSON
100 North Tampa Street, Suite 3700
Tampa, FL 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502

*Attorneys for The Gray Insurance Company*